## SMITH *v.* SMITH.

The district court has jurisdiction in all cases of divorce and alimony, in the county wherein the plaintiff resides, even in cases where it appears that the cause of action arose outside of the county or state.

Section 2497 of the Code, authorizing the service of notice through the post office, when the parties reside at different places, between which there is regular communication by mail, should be strictly observed, and courts should carefully guard against any abuse of its provisions.

A notice addressed to Mrs. R. L. Smith, to a post office in a city where she had been always known and addressed as Mrs. Asahel L. Smith, is not sufficient, when it was known by the party sending the notice, that she was absent from said city.

In order to give the court jurisdiction in a case of divorce, the plaintiff's residence in the county must be be *bona fide,* and not merely for the purpose of obtaining a divorce under the laws of Iowa.

The Code, in reference to divorce, should be strictly enforced, and the requirements fully observed.

## *Appeal from Dubuque District Court.*

*Opinion by* WILLIAMS, C. J. On the 10th day of August, 1853, Asahel L. Smith, filed his petition for a divorce, in the district court of Dubuque county, praying that the bonds of matrimony as contracted by him, with his wife Rosetta L. Smith, might be dissolved. The petition is in the usual form, and sets forth that the parties were married on or about the 14th day of January, 1836, at Watertown, Jefferson county, in the state of New York. That they had continued to live together as husband and wife, until the month of January, 1853. The causes of complaint, upon which the application is founded, are, inhuman treatment, such as to endanger his life, and refusal and failure on part of the said Rosetta, to perform the duties of the marital relation; extravagant and wanton expenditure of his means, so as to encumber him with debts; and a series of facts exhibiting a violent and ungovernable temper, without cause, so that he could not live in peace and happiness with her; and that their mutual welfare required their seperation.

The petition proceeds, at great length, with a statement of facts and instances of misconduct and abuse, on her part, without provocation, and an averment of performance by him of all the duties of a good and kind husband. It also sets forth, that they have living three children, one fifteen years, one seven years, and one two years old. That he has provided for their comfort and support, and wishes to educate and bring them up in life, so as to be from and without the influence of their mother. He also avers, that he has been for six months preceding the time of filing of his complaint, a resident of the state of Iowa. He concludes with a prayer for a divorce from the bonds of matrimony and relief according to the nature of the case.

It appears of record, that a notice in due form of the filing of the petition citing the respondent, Rosetta L. Smith, to appear and answer to the complaint, was issued, and put into the sheriff's hands on the 10th day of August, 1853, and on the same day returned by him "not found."

A like notice was also published in the *Miner's Express*, a newspaper published in the city of Dubuque, for four weeks consecutively from the 31st day of August, 1853, as appears by the affidavit of the editor and publisher of that paper.

The notices required the defendant "to appear and answer on or before the 4th day of October, 1853, or otherwise judgment would be entered against her."

It also appears of record, that the petitioner Asahel L. Smith, to show service, made affidavit as follows: "That R. L. Smith, the above named defendant is residing in Syracuse, in the state of New York, as he is informed and believes. He further states, that on the 1st day of September, 1853, he mailed to the said R. L. Smith, a copy of the petition and also a copy of the notice in said case. That said letters were directed to the said R. L. Smith, at Syracuse, her place of residence; and that he deposited the letters containing said copies in the post office at Dubuque,

on the date aforesaid. . This affidavit bears date October 4th, 1853.

On the 4th day of October, 1853, the cause was called for hearing. The petitioner appeared by his counsel. The respondent not appearing, a default was entered, and the divorce as prayed for decreed.

On the 19th of January, 1854, a writ of error, *coram nobis*, was issued on the application of Rosetta L. Smith, returnable to the March term of district court of Dubuque county, in the case. When the parties appeared for hearing thereon, with testimony to establish grounds of merit. The respondent, Rosetta L. Smith, by her counsel, moved the court to set aside the decree of divorce granted at the last term of the court, on the complaint of her husband, Asahel L. Smith, against her for reasons in her application on file; and further protested against the said proceeding.

1. For the want of jurisdiction in the court.

2. The want of sufficient notice that should be legally binding on her; and she protested against the proceedings generally. After argument had, the court decided that it did possess jurisdiction of the case; but also set aside the decree of divorce, entered at the previous term, and allowed the defendant to come in and file her answer, and make defense to the petition.

To this ruling of the court, exception was taken by the counsel for both parties, whereupon the case is appealed for adjudication in this court.

The following are the assignments of error, filed by defendant's attorney.

1. The court erred in overruling the motion of the defendant, asking the court to refuse jurisdiction of the case, when it appears by the record. that the cause of action arose out of the district where the suit was commenced.

2. The court erred in deciding that the defendant could be brought into the courts of Iowa, against her consent by a service through the mail, directed to her in New York.

3. This court erred in entertaining jurisdiction of the

Smith *v.* Smith.

cause, without evidence that the plaintiff had a residence in Iowa, but when the contrary expressly appeared, that he never had a residence in the state.

We will consider the assignments of error in the order in which they are presented.

The point made by the first assignment of error is settled by the statute in express terms. The *residence* of the plaintiff in the county, is made the requisite in establishing the jurisdictional power of the district court in cases of divorce. Chapter 86, § 1480; provides that "the district court in the county where the plaintiff resides, has jurisdiction of all cases of divorce, and alimony, and of guardianship connected therewith."

There is nothing in the terms of this section which confines the power of the court to marriages or causes of complaint, which may occur within the county or the state where the suit is commenced, but its provisions extend to "*all cases* of divorce," &c. The contract of marriage and action of divorce, by the provisions of our Code, are considered as transitory. As such, the subject is treated by our courts in the same manner that other matters of contract of that nature are. We find no constitutional objection to interfere with this position. Besides, to make the action local, would work manifest hardship in many cases. The court being satisfied of the *residence* of the plaintiff, had power to proceed to the trial of the case, upon the proof thereof, in compliance with the statute.

The second assignment of error, is well taken in the case as presented. The Code provides as follows, on the subject of notice by mail :

" When the party making service, and he on whom it is to be made reside in different places between which there is a regular communication by mail, service may be made by directing the paper properly through the post office, and paying the postage thereon. The paper shall, in that case, be deemed served at the time at which the next

regular mail would reach the place of residence of the party on whom it is to be sevred." § 2497.

The party who resorts to this kind of notice, must be held to a strict and faithful compliance with the statute, and courts will be careful to guard against any abuse of its provisions which might result in unfairness. Upon the hearing *coram nobis* in the court below, to which we find no valid objection in law, the defendant shows by proper evidence, that the plaintiff knew that she was for the time being sent by him to Oswego. That he had left her, stating that he was going to California, that their home had been broken up in Syracuse, so that it was to say the least of it, uncertain whether the notice and papers would reach her as addressed to Syracuse, New York. In addition, however, to this, the name by which, according to his own affidavit of service, he addressed them to her is proven to be different from that by which she had been known, and to which she had responded, from the time of their marriage, which was then about eighteen years. Taking the case all together, this matter of notice by the mail being addressed to Mrs. R. L. Smith, when she had been, since her marriage always known, and addressed by written communication as Mrs. Asahel L. Smith, savours strongly of design, by fraud, to thwart and defeat the intention of the law. Although we consider the evidence on this subject sufficiently establishes the fact, we are confirmed in this conclusion by the extraordinary conduct of the plaintiff as proven, throughout his procedure for the procurement of the divorce. The affidavit of Mrs. Smith, as to her ignorance of his application and proceedings for the divorce, until after it had been decreed, we think, is fully sustained by the evidence of other witnesses; and fixes the character of the transaction too plainly, to permit it to receive legal sanction. To do so would be to give legal effect to fraud. Such service did not give the court proper legal jurisdiction of the person of the defendant.

The third assignment of error is also well taken. Sec-

Smith *v.* Smith.

tion 1480, of the Code makes " the residence of the plaintiff, within the county," an indispensable requisite to give the district court jurisdiction "in all cases of divorce and alimony." Such residence must be *bona fide*. A mere temporary sojourn, for a season, *in transitu*, without intent of domiciliation and citizenship, is not what we understand by the *residence* contemplated by the legislature. It certainly could not have been intended by the legislature, that a malcontent of marriage contract, wishing to be freed from its sacred obligations, should be permitted in a clandestine manner, to leave his family and home in another state, where the law would enable him to adjust his rights, and redress his grievances, if any existed; where the parties, to such proceeding both resided and could be fairly and fully heard, where the acts of complaint if any, all transpired, and the testimoney could be most conveniently procured and come to this state for the sole and specific purpose of remaining here six months to set up a residence, that he might procure a divorce, and then return.

Such preliminary changes of venue, at the option of a party to the marriage contract, we opine, cannot be sustained by either the letter or spirit of our Code. To give such effect to it, would be judicial condemnation of the wisdom and morality of the legislature. The evidence of the case establishes the fact, by the statement of the plaintiff, that he had been advised by an attorney that he could procure a divorce more easily in Iowa, than in any other state; and that he had been staying in Dubuque long enough for that purpose, and no other; that he was on his return to the state of New York, and would never live with his wife again.

In the case of *Hunt* v. *Hunt*, decided at this term, we have expressed our unwillingness to add to statutory facility that of loose judicial construction, to aid in the procurement of divorces from the marriage contract. Upon the most deliberate consideration of the subject, we

reiterate what we expressed in that case. The family relation lies at the foundation of society. Upon it rests the well being and hopes of the community. In its rights, duties and responsibilities are involved the dearest and highest interests of the state. The law, by enactment and due administration, should cherish and guard it with sacred fidelity. Otherwise, instead of being the legitimate means of individual and general happiness and prosperity, it will be perverted, and become the fruitful source of misery and ruin. It is the duty of our judicial tribunals to expound, faithfully, the enactments of the legislature, and give them due effect by legal execution. This we will do ; but in the absence of legislative provisions requiring it of us, we are not ambitious to establish for Iowa, by judicial construction, the humbling *distinction* of being " the state in which a divorce can be most easily obtained." The effect would be to make our young state the receptacle of those who are regardless of domestic and social virtue, and her laws the instrument of wrong, by depriving the innocent and unsuspecting of their rights.

We are of the opinion that the plaintiff had not acquired such a residence as is required by the Code ; that therefore the district court could not exercise jurisdiction in the case, and the complaint must be dismissed.

Decree reversed.


*Smith*, *McKinlay* and *Poor*, for appellant.

*Clark* and *Bissell*, for appellee.